UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAWN MARSHALL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:23-cv-00781-JPH-MG ) |
| ANDIS Sgt., KAFFENBERGER Sgt., | ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Indiana Department of Correction inmate Shawn Marshall alleges that Sergeant Andis and Sergeant Kaffenberger used excessive force by deploying pepper spray to break up a fight between Mr. Marshall and another inmate. Defendants have filed a motion for summary judgment, dkt. [50]. For the reasons set forth below, the motion for summary judgment is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because

those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017).

## II.
## Factual Background

Because Sgt. Andis and Sgt. Kaffenberger have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Mr. Marshall was an inmate, and Sgt. Andis and Sgt. Kaffenberger were staff members at Correctional Industrial Facility on April 11, 2023, when Mr. Marshall got into a fight with another inmate. Dkt. 1; dkt. 52-1 at 12 ¶¶ 15–18 (Marshall Deposition). Both the fight and the officers' intervention to break it up were recorded on surveillance video, which the Court has reviewed. Dkt. 54 (manually filed video recording). Mr. Marshall was getting food from the food line when he got into an altercation with another inmate. Dkt. 52-1 at 12–13 ¶¶ 25–24. Mr. Marshall approached the other inmate, but then began backing away before attempting to punch the inmate in the face. Dkt. 54 at 00:00:38-00:00:53. Mr. Marshall then grabbed his tray of food and threw it at the other inmate. *Id.*

At this point, Sgt. Kaffenberger pulled his OC spray[1] out, aimed it at both inmates, and ordered them to get on the ground. Dkt. 54 at 00:00:51-00:01:20; dkt. 52-1 at 16 ¶ 13–20. Mr. Marshall complied but the other inmate

---

[1] The Court takes judicial notice that OC stands for Oleoresin Capsicum aerosol, a type of pepper spray often used by prison guards and law enforcement.

3

did not, instead attempting to kick Mr. Marshall while he was on the ground. Dkt. 54 at 00:00:56-00:01:03.

Sgt. Andis then deployed Mark 90, a type of OC spray, aimed at the other inmate. Dkt. 54 at 00:00:58-00:01:11; dkt. 52-1 at 44. In his verified response, Mr. Marshall states that Sgt. Andis did not give any warning before using his OC spray. Dkt. 55 at 3. Mr. Marshall stood up right into the stream of Mark 90 that Sgt. Andis was attempting to spray at the other inmate. Dkt. 54 at 00:00:58-00:01:11. Mr. Marshall then retreated to the corner of the room to escape the Mark 90 spray. *Id.* He was placed on the ground again and cuffed. *Id.*

After being sprayed, Mr. Marshall was taken directly to medical and offered a decontamination shower. Dkt. 52-1 at 20-22. He had difficulty seeing for two hours after the incident and his sight has gotten progressively worse. *Id.* at 22.

### III. Discussion

Defendants argue that they are entitled to summary judgment on Mr. Marshall's claims that they used excessive force against them by deploying OC spray during this incident.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citing *Whitley v. Albers*, 475 U.S.

312, 320–21 (1986)); *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (cleaned up).  OC spray can be used "when reasonably necessary" to subdue an inmate or maintain control, and is a violation of the Eighth Amendment only if used "in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain."  *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984); *see Musgrove v. Detella*, 74 F. App'x 641, 646 (7th Cir. 2003).  When evaluating whether prison staff's use of force was reasonably necessary or excessive, courts look at several factors:

> The ultimate determination of the intent of the person applying the force in an excessive force claim involving prison security measures depends upon a number of factors, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019) (internal citations omitted).  "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."  *Id.* (quoting *Whitley*, 475 U.S. at 321).

Here, the first factor—the need for the application of force—weighs heavily in favor of Defendants.  The video shows that Mr. Marshall and the other inmate were involved in an altercation that quickly escalated to physical violence.  Dkt. 54 at 00:39-00:55.  Sgt. Kaffenberger then ordered Mr. Marshall and the other inmate to get down on the ground.  Dkt. 52-1 at 16.  While Mr.

5

Marshall complied, the other inmate did not and instead attacked Mr. Marshall. *Id.* at 00:56-01:02 (showing Sgt. Kaffenberger pointing his OC spray at the other inmate and following him as the other inmate walked toward Mr. Marshall, who was on the ground). At this point, Sgt. Andis deployed his OC spray. *Id.* From the video, it's clear that Sgt. Andis had his OC spray pointed at the other inmate, who was standing over Mr. Marshall attempting to kick him while he lay on the ground, and that Mr. Marshall was sprayed incidentally as got up off the ground. *Id.* 01:00-01:06.

 The second factor—the relationship between the need and the amount of force that was used—also weighs heavily in favor of Defendants. Mr. Marshall and the other inmate were engaged in a violent altercation, having already exchanged blows. Sgt. Kaffenberger ordered them onto the ground while pointing his OC spray at them. The other inmate didn't comply and starting kicking Mr. Marshall. It was only then that Sgt. Andis deployed a single five-second burst of OC spray. Dkt. 54 at 00:01:01-00:01:05. This amount of force was not a disproportionate response to the other inmate physically attacking Mr. Marshall and refusing to follow orders. *See Jackson v. Angus*, 808 F. App'x 378, 382 (7th Cir. 2020) (finding district court correctly found that there was no factual dispute on excessive force claim where "video footage show[ed] that tactical team officers used two short bursts of pepper spray on Jackson only after he disobeyed three direct orders to come out of his cell"); *Rice ex rel. Rice v. Correctional Medical Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (use of pepper spray justified when inmate refused to comply with order to step out of his

6

cell); *cf. Soto*, 744 F.2d at 1270 (violation of the Eighth Amendment if an officer uses a chemical agent "in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain.").

The third factor—the extent of the injury—is neutral. On one hand, Mr. Marshall experienced pain in his eyes and had difficulty seeing, dkt. 52-1 at 20-22, and later sought further medical treatment for his eyes, dkt. 56 at 9, 11, 28. On the other hand, Mr. Marshall was taken to medical immediately after the incident and thereafter given the opportunity for a decontamination shower to rinse off the OC spray. Dkt. 52-1 at 20-22. When an inmate is promptly given the opportunity to wash off OC spray, exposure to OC spray ordinarily does not give rise to a risk of serious medical issues. *Pearson v. Wiley*, 2020 LEXIS 10369, at *6 (S.D. Ind. January 22, 2020) (quoting *Buchanan v. Pfister*, 2018 WL 4699778 at *7 (collecting cases)). And the types of conditions associated with exposure to OC spray are generally considered "relatively minor." *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (citing *Oliver v. Deen*, 77 F.3d 156, 160-61 (7th Cir. 1996)) ("[B]reathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy…are, objectively speaking, relatively minor.").

The fourth factor—the extent of the threat posed by the inmate to the safety of inmates and staff—weighs again in favor of Defendants. Mr. Marshall and the other inmate were engaged in a violent confrontation that had quickly escalated. Also, there were other inmates in close physical proximity. The violent confrontation, combined with the other inmate's refusal to comply with

orders and continued physical aggression, presented risk of harm to Mr. Marshall, other inmates, and staff.

Last, the fifth factor—efforts to temper the severity of the force—also weighs in favor of Defendants. It does not appear that Sgt. Kaffenberger used any force against Mr. Marshall. Dkt. 54. Mr. Marshall argues that Sgt. Andis could have used a less potent spray rather than Mark 90 spray to deescalate the conduct, but he chose to use Mark 90 counter to IDOC policy. Dkt. 55 at 4. However, Mr. Marshall designates no evidence from which a jury could find that Sgt. Andis was prohibited from using Mark 90 to break up a violent physical altercation like the one that occurred between him and the other inmate. *See Thompson v. City of Chicago*, 472 F.3d at 444 (7th Cir. 2006) ("[Section] 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations."). Mr. Marshall also argues that Sgt. Andis should have warned him before deploying his Mark 90 spray. But the designated evidence clearly shows that the other inmate ignored Sgt. Kaffenberger's order to get down on the ground, instead opting to attack Mr. Marshall. Under these circumstances, no further warning was needed for Sgt. Andis to deploy his Mark 90 spray at the other inmate. *See Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010) (affirming dismissal of excessive force claim when officer used mace to break up altercation between inmates); *Rice*, 675 F.3d at 668.

8

Applying the five factors from *McCottrell* to the facts here, the only reasonable inference is that neither officer intended to unnecessarily inflict harm on Mr. Marshall. No jury could reasonably conclude that Defendants used excessive force against Mr. Marshall, so Defendants' motion for summary judgment is **granted**.[2]

## V.
## Motion to Strike

On July 3, 2024, Mr. Marshall filed a second response in opposition to summary judgment. Dkt. 59. This response was nearly identical to his first response in opposition to summary judgment. Dkt. 55, 56. The Defendants' motion to strike Mr. Marshall's response, dkt. [63], is **DENIED** to the extent that the Court recognizes that these responses are duplicative, and Mr. Marshall's arguments from his first filing are duly considered as his response.

## V.
## Conclusion

Defendant's motion to strike response, dkt. [63], is **DENIED**. Sgt. Andis and Sgt. Kaffenberger's motion for summary judgment, dkt. [50], is **GRANTED**. Final judgment will now issue.

**SO ORDERED**.

Date: 3/5/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[2] Because the Court concludes that Defendants' use of force did not violate the Eighth Amendment, it need not address their alternative argument that they are entitled to qualified immunity.

Distribution:

SHAWN MARSHALL
PO Box 1523
Thomasville, GA 31799


All electronically registered counsel